The **MAYOR AND BOARD OF ALDERMEN OF the TOWN OF BOONTON, a municipal corporation organized under the laws of the State of New Jersey and located herein, Plaintiff,**

v.

**DREW CHEMICAL CORPORATION, a corporation organized under the laws of the State of Delaware, with offices located in the State of New Jersey, Defendant/Third-Party Plaintiff,**

v.

**DOMENICO PEPE, Owner (1 to 100) a Generator (1 to 499), a Transporter (1 to 200) a fictitious name, Third Party Defendant.**

Civ. A. No. 83–4761.

United States District Court,
D. New Jersey.

Nov. 15, 1985.

Joseph J. Maraziti, Jr., Maraziti, Kalish & Gregory, Morristown, N.J., for plaintiff.

Harry Jay Levin, c/o Drew Chemical Corp., Boonton, N.J., Edward F. Lamb, Robinson, Wayne, Levin, Riccio & LaSala, Newark, N.J., for Drew Chemical.

John J. Genoble, Montville, N.J., for Domenico Pepe.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is an action by plaintiffs, the Mayor and Board of Alderman of the Town of Boonton, New Jersey, against the Drew Chemical Corporation, for damages pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.* ("CERCLA" or the Act) and state law. This matter is presently before me on defendant's motion for summary judgment on plaintiff's CERCLA claims and for dismissal of plaintiff's pendent claims under state law. This motion was first before this court on June 24, 1985. At that time I ruled on some of defendant's arguments, however a portion of defendant's motion was continued to this date to permit plaintiff an opportunity to respond to two arguments raised by defendant for the first time in its reply brief to this court. In particular, the issues presently before this court are:

(1) whether a municipality, such as plaintiff, is a "state" for purposes of recovery under § 9607(a)(4)(A) or (C) of CERCLA and

(2) whether plaintiff can recover for response costs incurred prior to December 11, 1980, the effective date of CERCLA.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall not be granted unless, drawing all reasonable inferences in favor of the nonmoving party, there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. *See Sames v. Gable,* 732 F.2d 49, 51 (3d Cir.1984).

Viewing the facts in a light most favorable to plaintiff, the underlying facts here are as follows. Pepe Field is a 3.5 acre park located in Boonton. The property was acquired by Boonton in the early 1970's from the Bentley Estate which had owned it for many years. The area had originally been low and swampy but, according to plaintiffs, due to arrangements between the Bentley Estate and Drew Chemical, Drew had dumped waste from its industrial operations in the field for many years. The dumping activity ceased some time in the 1940's. *See* Video Taped Depositions of Padavano and Bentley, Affidavit of Ricky Prill, Exhibits E and F. Boonton has taken a variety of steps to assess and mitigate any threat to public health from contamination of Pepe Field. The field is closed to the public. Town police monitor the site. The Town has constructed and currently maintains an on-site treatment facility which treats subsurface drainage from the site prior to its discharge into a nearby gravel curtain drain by application of hydrogen peroxide to the drainage from the field. Town employees check the filtration facility on a daily basis. To date, the Town has expended nearly $40,000.00 on this effort alone. *See* Pr. 11 Affidavit.

Further, in order to determine the nature and extent of the threat to public health and to develop data on the waste deposits at the field, the Town engaged the services of Elson T. Killam Associates, Environmental and Hydraulic Engineers. Killam Associates have taken subsurface waste samples and performed a variety of sophisticated tests on the samples obtained. It is

unclear from the record exactly when the above described costs were incurred.

Pursuant to CERCLA, in December of 1982 the Environmental Protection Agency designated Pepe Field as a national priority toxic waste site for cleanup purposes. By letter dated May 23, 1983, the New Jersey Department of Environmental Protection (NJDEP) notified both parties to this action "that a site evaluation study must be conducted to determine the effect of the wastes buried in Pepe Field on the quality of the air, ground waters and surface waters in the area." *See* Prill Aff. at Ex. A. After further describing the study in question, NJDEP reiterated that it "is requesting the Town of Boonton, as the present owner of the site, and Drew Chemical Corp., as the principal generator of wastes buried at the site, to jointly or singularly conduct this study." *Id.* By letter dated June 24, 1983, the Town of Boonton notified Drew that it had "determined that the requested site evaluation study should be the sole responsibility of Drew ... [i]nasmuch as Drew was the generator of the wastes dumped over the years ... [and] because it places the burden of responsibility upon the party whose conduct created the problem ... [and who] is better positioned to identify and evaluate the characteristics of the wastes." *See* Prill Aff. at Ex. B.

Efforts to resolve the issue of responsibility between the parties by negotiation failed and on December 9, 1983 the Town filed a formal claim letter with Drew, *see* Ex. C to Prill Affidavit, and filed the instant civil action. Count One seeks recovery of costs incurred by Boonton as a result of the pollution of Pepe Field under 42 U.S.C. § 9607(a)(4)(A) and (B). Count Two seeks damages for injury to natural resources pursuant to 42 U.S.C. § 9607(a)(4)(C). The remaining four counts seek relief under state law as noted *supra.*

The operative provision of CERCLA regarding liability states in pertinent part as follows:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from such a release.

42 U.S.C. § 9607(a). Subsection (f) of § 9607 further states that liability under § 9607(a)(4)(C) "shall be to the United States Government and to any state for natural resources within the state or belonging to, managed by, controlled by, or appertaining to such state...." 42 U.S.C. § 9607(f).

I turn now to the issues outlined *supra*, which remain to be decided by this court.

■ As to the first question, in support of its motion, defendant points to the language of § 9607(a)(4)(A) which imposes liability for "all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan." Defendant further points to § 9607(f) which modifies § 9607(a)(4)(C) providing for liability for injury, destruction or loss of natural resources as follows:

In the case of an injury to, destruction of, or loss of natural resources under subparagraph (c) of subsection (a) of this section liability shall be to the United States Government and to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such state....

42 U.S.C. § 9607(f).

In arguing that the Town of Boonton is not the state for purposes of recovery under the above provisions of CERCLA, defendants contend that in the definitional section of the Act the terms, "United States" and "State" are defined as "the several states of the United States, the District of Columbia, the Commonwealth of Puerto Rico ... and any other territory or possession over which the United States has jurisdiction." 42 U.S.C. § 9601(27). In further support of its argument, defendant contends that because Congress specifically referred to "states or political subdivisions" in § 9604(d) of the Act, it must have intended to exclude municipalities wherever no reference to political subdivisions was made in the Act.

I am not persuaded by these arguments. First, as plaintiff correctly points out, the Act nowhere provides that the term "state" *means* the several states but instead specifically provides that the term "state" shall *"include"* the entities listed in § 9601(27) (emphasis added). It is undisputed that:

A term whose statutory definition declares what it 'includes' is more susceptible to extension of meaning by construction than where the definition declares what a term 'means.' It has been said 'the word includes is usually a term of enlargement, and not of limitation.... It, therefore, conveys the conclusion that there are other items includable, though not specifically enumerated....'

Singer, N., 24 Statutes and Statutory Construction § 47.07 (4th Ed. 1984) (citations omitted). *See also, Pfizer Inc. v. Government of India*, 434 U.S. 308, 312 n. 9, 98 S.Ct. 584, 587 n. 9, 54 L.Ed.2d 563 (1978); *Federal Land Bank v. Bismarck Co.*, 314 U.S. 95, 99–100, 62 S.Ct. 1, 3–4, 86 L.Ed. 65 (1941); *Highway & City Freight Drivers v. Gordon Transport Inc.*, 576 F.2d 1285, 1289 (8th Cir.), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 678 (1978); *United States v. Beneficial Corp.*, 492 F.Supp. 682, 684 (D.N.J.1980). The definitional section in question therefore explicitly contemplates an expansion of the illustrative list by the courts to the fullest extent where to do so would be consistent with the remedial intent of the Act. *See generally, Winterrowd v. David Freedman and Co., Inc.*, 724 F.2d 823, 825 (9th Cir.1984).

Further, while § 9607(f) limits liability for loss of natural resources to the United States or a state "for natural resources within the state or belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the U.S. ... [or] any State or *local government*." 42 U.S.C. § 9601(16) (emphasis added). It would be anomalous for this far reaching remedial statute to give states a cause of action for damages to natural resources owned by the State but for it to exclude cities from access to such a cause of action while expressly including resources owned by "local governments" within the scope of the protected subject of § 9607(a)(4)(C). As I have previously noted in my June 24 ruling, "CERCLA should be given a broad and liberal construction." *See, e.g., United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1112 (D.Minn.1982).

In this regard, I note the references to "local governments," 126 Cong.Rec. 26,358 (1980), *see also id.* at 26,766, cleanup and

containment by "States and the onsite people" with "the capacity and inclination to cleanup and contain," *id.* at 26,345, and the responsibility of the Nation as a whole for clean up, *id.* at 26,346, in the floor debates on the House bill.

Finally, in construing the definition of "state" in CERCLA to encompass governmental subdivisions of the state for purposes of liability and standing under §§ 9607(a)(4)(A) and (C) as modified by § 9607(f), I note that Congress has frequently defined "state" broadly to mean the fifty states and a variety of other governmental subdivisions and entities such as municipalities. *See, e.g.,* Armed Forces Act of 1959, 10 U.S.C. § 2232(1) (1983), Consumer Credit Protection Act, 15 U.S.C. § 1692a(8) and § 1693a(10) (1982), Natural Gas Policy Act of 1978, 15 U.S.C. § 3316(b)(2)(C)(i) (1982), Organized Crime Control (RICO) Act of 1970, 18 U.S.C. § 1961(2) (1984), Florida Indian Land Claims Settlement Act of 1982, 25 U.S.C. § 1742(2) (Supp.1985), Internal Revenue Code of 1954, as amended, 26 U.S.C. § 457(d)(1) (Supp.1985), Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(c)(2) (1975), Act of August 31, 1954, Pub.L. No. 83-738, 30 U.S.C. § 552 (1971), Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601(2) (1983), Powerplant and Industrial Fuel Act of 1978, 42 U.S.C. § 8441(e)(4) (1983), Communications Act of 1934, as amended, 47 U.S.C. § 224(a)(3) (Supp.1985), Cable Communications Policy Act of 1984, 47 U.S.C. § 522(15) (Supp.1985), Motor Carrier Safety Act of 1984, 49 U.S.C. § 2503(10) (Supp. 1985), but see Intergovernmental Cooperation Act of 1970, 42 U.S.C. § 4762(3) (1983). While the statute in question does not define "state" to mean municipalities as well, it is reasonable to expand the illustrative list introduced by the word "includes" to encompass entities frequently explicitly within the meaning of the term "state" as legislatively defined.

For these reasons I am not persuaded that Congress intended to preclude cities from suing for damages to natural resources owned by them. *See generally, City of Philadelphia v. Stepan Chemical Co.,* 544 F.Supp. 1135, 1141-42 (E.D.Pa. 1982) (refusing to preclude suits by cities under other provisions of CERCLA). I therefore conclude that municipalities are within the scope of the entities Congress entrusted with standing both to recover costs for cleanup under § 9607(a)(4)(A) as well as to sue for damages for injury to, destruction of, or loss of natural resources under § 9607(a)(4)(C) of CERCLA. In short, municipalities are within the scope of the term "state" as used in the Act.

■ Alternatively, I note that § 9607(f) states that "[t]he President, *or the authorized representative of any state*, shall act on behalf of the public as trustee of such natural resources to recover for such damage." 42 U.S.C. § 9607(f) (emphasis added). The Act does not define the term "authorized representative" and plaintiff reasons that state law may provide some guidance to a federal court seeking to determine whether a municipality could be construed as an authorized representative of the state under appropriate circumstances. Plaintiff cites to Art. 4, Sec. 7, par. 11 of the New Jersey Constitution requiring all laws respecting the powers of municipal corporations to be liberally construed in their favor and to New Jersey Home Rule Act, N.J.S.A. 40:42-1 at 4 stating that "all courts shall construe [its provisions] ... most favorably to municipalities it being the intention to give all municipalities to which this subtitle applies the fullest and most complete powers possible over the internal affairs of such municipalities for local self-government." While I am not convinced that Congress intended state law to govern the question of who or what is an "authorized representative" under CERCLA, I find these state law provisions cited by plaintiff to be of some value in my determination in this regard. I note as well that Pepe Field, the subject of this lawsuit, is owned by the Town of Boonton and may, therefore, be considered a matter of local concern within the scope of the state statute cited *supra.* Finally, I note

that in this case the facts reveal that all post CERCLA costs were clearly incurred by the Town acting on the direction of the NJDEP and thus, I find, as an authorized representative of the state to this extent.

On the basis of the foregoing, I find that either by liberally construing the language of CERCLA in light of its broad remedial purposes or by specifically construing § 9607(f) in light of state law giving municipalities broad powers, a municipality is a state or authorized representative thereof for purposes of invoking the provisions of CERCLA. I believe that such a construction of the Act is consistent with its purpose to encourage and facilitate the clean-up and treatment of hazardous wastes in order to protect and preserve natural resources and the public health.

I turn now to the question of what response costs may be recovered under CERCLA. It is undisputed that the effective date of CERCLA was December 11, 1980. 42 U.S.C. § 9652(a). The question of the retroactivity of CERCLA has involved the courts in two issues: (1) does CERCLA provide liability for response cost incurred with regard to pre-CERCLA acts and (2) if so, does CERCLA provide for liability of costs incurred pre-CERCLA or only for costs incurred post-CERCLA albeit for pre-CERCLA acts, since the facts in this case indicate that all of the acts of dumping covered by CERCLA were performed prior to December 11, 1980. However, it appears that some of the response costs incurred by the Town of Boonton were incurred prior to that date. Both issues are therefore before this court.

■ As to the first, defendant does not dispute and courts have universally held that CERCLA provides liability for acts within its scope but prior to its effective date. *See U.S. v. Shell Oil Co.,* 605 F.Supp. 1064, 15 Environmental Law Reporter 20337, 20340 (D.Colo.1985); *U.S. v. Northeastern Pharmaceutical & Chemical Co.,* 579 F.Supp. 823, 839 (W.D.Mo. 1984) (and cases cited therein).

■ Courts have divided, however, over the question of whether CERCLA is retroactive to the extent that costs incurred prior to December 11, 1980, are recoverable under the Act. *Compare Shell Oil,* 605 F.Supp. 1064, 15 E.L.R. at 20340 (holding that pre-CERCLA costs are recoverable) with *Northeastern Pharmaceutical,* 579 F.Supp. at 843. Although I am cognizant that there is a presumption against retroactivity which may only be overridden if retroactivity "be 'the unequivocal and inflexible import of the terms [of the statute], and the manifest intention of the legislature,'" *U.S. v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1983) quoting *Union Pacific R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) (citations omitted), I am nevertheless persuaded that Congress intended *all costs* including those incurred before the effective date of the Act to be recoverable under CERCLA. I base my conclusion in this regard on the exhaustive analysis of this issue by Judge Carrigan in the *Shell Oil* case. Judge Carrigan concluded as I have, "that the unavoidably retroactive nature of CERCLA, and Congress' decision in CERCLA to impose the cost of cleaning up hazardous waste sites on the responsible parties rather than on taxpayers, strongly indicate Congressional intent to hold responsible parties liable for pre-enactment government response costs." *Shell Oil,* 605 F.Supp. 1064, 15 E.L.R. at 20340.

I agree with the Court in *Shell Oil* that where there is evidence that a statute was "rushed through a lame duck session of Congress," *see State of Ohio ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300, 1310 n. 12 (N.D.Ohio 1983), the directly conflicting verb tenses of the liability provision in effect "cancel each other" and ought not to be considered dispositive on the question of retroactivity. *See Shell Oil,* 605 F.Supp. 1064, 15 E.L.R. at 20340 discussing 42 U.S.C. § 9607(a)(4). I therefore do not believe that the case of *Summers v. Skibbs A/S Mыken,* 191 F.Supp. 929, 930 (E.D.Pa.), *aff'd per curiam,* 296 F.2d 548 (3d Cir. 1961) is controlling on the issue before me.

Similarly, I am persuaded by Judge Carrigan's analysis that the requirement in the Act that costs be consistent with the National Contingency Plan (NCP) in no way precludes a conclusion that the Act was intended to provide for recovery of pre-CERCLA costs incurred. Regardless of whether the original or revised NCP is utilized for this determination, I agree with Judge Carrigan that "nothing prevents ... recovery of costs later determined to be consistent with the NCP. The consistency requirement addresses the *nature* of the response action for which costs can be recovered, not the *timing* of the action." 605 F.Supp. 1064, 15 E.L.R. at 20340.

Further, I agree that "Congress implicitly authorized retroactive application of sections 107(a)(4)(A) and (B) by affirmatively limiting retroactive application of the third category of liability, damages to natural resources, section 107(a)(4)(C)."

It is true as Judge Carrigan notes that at least two courts have felt constrained to find against retroactivity on this point because of the absence of a clear affirmative statement in the Act. *See Northeastern Pharmaceutical,* 579 F.Supp. at 842; *U.S. v. Wade,* 577 F.Supp. 1326 (E.D.Pa.1983). However, as recently as 1983, as noted *supra,* the Supreme Court required only that the unequivocal and inflexible import of the statute and the manifest intention of Congress in favor of retroactivity be shown. *Security Industrial,* 459 U.S. at 79, 103 S.Ct. at 412. (citations omitted). There is no requirement that retroactivity be expressly provided for in the Act. Here, I find that the clear unequivocal thrust of CERCLA by its terms and by the legislative history discussed in the *Shell Oil* case, is to provide for retroactivity in all respects that do not offend basic constitutional principles of fairness and due process. No party has argued, nor do I find, any such principles offended by the retroactive application of CERCLA to costs incurred prior to the Act's effective date. I therefore find that such response costs may be recovered by plaintiff herein.

In sum, I note that this court is not unaware of the importance of the issues raised herein and my heavy reliance on Judge Carrigan's opinion should not be construed as an abdication of the responsibility of this court to consider the issues raised anew. Instead, I have carefully reviewed the statute, the legislative history and the caselaw and, for the reasons set forth in the *Shell Oil* opinion and reiterated by this court *supra,* I have concluded that pre-CERCLA response costs are coverable and that they may be recovered by the plaintiff herein if all other issues of fact are resolved in plaintiff's favor with the sole exception set forth in § 9607(f) regarding claims under § 9607(a)(4)(C).

The continued portion of defendant's summary judgment motion is denied.

### SUPPLEMENTAL ORDER

This matter having come before the Court on the defendant's motion for summary judgment and argument having been heard and an oral opinion having been rendered on a continued portion of defendant's motion on July 24, 1985;

It is on this 14th day of November, 1985;

ORDERED that the oral opinion rendered on July 24, 1985 shall be deemed superceded and amended by the opinion filed this date. Summary judgment is, as previously ordered, denied.