CITY OF PHILADELPHIA, et al.

v.

STEPAN CHEMICAL COMPANY, et al.

CITY OF PHILADELPHIA, et al.

v.

CONGOLEUM CORPORATION, et al.

Civ. A. Nos. 81–0851, 83–5493.

United States District Court,
E.D. Pennsylvania.

April 11, 1989.

Seymour Kurland, Frederick C. Bader, Denise D. Colliers, Mary Ellen Krober, Thomas J. Wamser, City of Philadelphia, Law Dept., for plaintiff.

Patrick T. Ryan, Bonnie Allyn Barnett, Michael J. Holston, Drinker, Biddle & Reath, Philadelphia, Pa., for Congoleum Corp.

Bertram A. Stone, Stone, Pogrund & Korey, Chicago, Ill., for Apollo Metals, Inc.

James J. Donahue, White & Williams, Philadelphia, Pa., Lee W. Shelly, Foley, Shelly & Niemann, Holmdel, N.J., for CPS Chemical Co.

Denis V. Brenan, Morgan, Lewis & Bockius, Philadelphia, Pa., for Durabond Products Co.

Michael H. Malin, White & Williams, Philadelphia, Pa., for Atlas Paint (Tepper Enterprises), Gates Engineering Co., DELCORA and Radiac Research Corp.

Clayton H. Thomas, Jr., Philadelphia, Pa., for Precision Tube Co.

John R. Howland, Howland, Hess & Guinan, Huntingdon Valley, Pa., for Chapman Indus. Finishes, Inc.

Glenn Equi, Julia Feliciano, Harvey, Pennington, Herting and Renneisen, Philadelphia, Pa., for Reading Industries, Inc.

Leonard J. Lefkort, Gilbert & Gilbert, New York City, for Radiac Research Corp.

Harry A. Rutenberg, Philadelphia, Pa., for Royal Petroleum Corp.

Christopher Gibson, Archer & Greiner, Haddonfield, N.J., for Princeton Chemical Co.

Edwin B. Barnett, Barnett & Brown, Philadelphia, Pa., for Edgar Clarke and Clarke Systems.

Antoinette Stone, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Nathan Auritt and Riva Snyderman, Trustees of the Sarah Kate Neuman Trust.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Plaintiff, City of Philadelphia, has moved for partial summary judgment with regard to whether the City, as a municipality, is a "state" within the meaning of section 107(a)(4)(A) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C.A. § 9607(a)(4)(A) (1983 & Supp.1988).[1] The City contends that it should be considered a state for purposes of this litigation, thereby placing the burden on defendants of proving that the response costs[2] incurred

---

1. Although the City's claim for relief in its second amended complaint is predicated upon section 107(a) generally, the litigation to date, as defense counsel point out, has proceeded on the assumption that the City is seeking to recover from defendants under section 107(a)(4)(B). *See City of Philadelphia v. Stepan Chemical Co., et al.,* 544 F.Supp. 1135, 1140–44 (E.D.Pa.1982) (discussing City's right to proceed against defendants pursuant to section 107(a)(4)(B)). I do not find that this precludes the City from attempting to rely on section 107(a)(4)(A) for relief, and the defendants have not so argued.

2. Response costs are the costs a party incurs in the cleanup of released hazardous substances. As defined by CERCLA, these costs include the costs of "removal" and the costs of "remedial" actions undertaken at a site. *See* 42 U.S.C. §§ 9601(23)–9601(25). Generally, removal actions are those intended for the short-term abatement of toxic waste hazards, while remedial actions are those intended to restore long-term environmental quality. *Artesian Water Co. v. Gov't of New Castle County,* 659 F.Supp. 1269, 1278 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir. 1988).

by the City in cleaning up the hazardous substances illegally dumped by defendants at the City's Enterprise Avenue landfill[3] were inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan (NCP).[4] The defendants have answered the City's motion and have themselves filed a motion in limine[5] seeking an order that the City is not a "state" within the meaning of section 107(a)(4)(A) and, therefore, bears the burden of proving that the response costs it incurred were inconsistent with the NCP. For the reasons which follow, I will deny the City's motion for partial summary judgment and grant defendants' motion in limine.

■ Sections 107(a)(1) through (4) define who may be liable as a covered party under CERCLA and provide that these responsible parties may be liable for the following costs:

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

42 U.S.C.A. § 9607(a)(4)(A)–(a)(4)(C). As the language of the statute makes clear, actions brought by the federal government or a state to recover costs pursuant to section 107(a)(4)(A) are distinguished from those actions brought by "any other person"[6] to recover costs pursuant to section 107(a)(4)(B). In an action by the federal government or a state pursuant to section 107(a)(4)(A), the burden is on the defendant to prove that the removal or remedial actions undertaken by the federal government or the state were inconsistent with the NCP. *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 746 (8th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Thus, the cleanup activities of the federal government and the states are entitled to a presumption of consistency which the defendant must overcome. The cleanup activities of "any other person," however, are not similarly presumed to be consistent with the NCP, and a private party must prove, as an element of its prima facie case under section 107(a)(4)(B), that

3. The facts of this case have been fully set forth in my earlier opinion, 544 F.Supp. at 1139. Briefly, the city owned and operated a landfill on Enterprise Avenue. Each defendant contracted with either Lightman Drum Company or ABM Disposal Company to haul and dispose of hazardous waste. During 1974 and 1975, Lightman and ABM gained access to the Enterprise Avenue site by bribing two city employees and illegally dumped hazardous waste at the site. The City discovered the illegal dumping in 1979 and undertook to clean up the hazardous waste at its own expense. This suit was brought to recover the cleanup costs and other damages from defendants.

4. The NCP, which is authorized by section 105 of CERCLA and promulgated at 40 C.F.R. § 300.1 *et seq.,* is designed to establish "procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants," including criteria for evaluating the appropriateness and effectiveness of response measures, along with methods for investigating and evaluating methods for the cleanup of hazardous substances dumpsites. 42 U.S.C.A. § 9605. Section 300.71 of the NCP delineates

different requirements for achieving consistency with the NCP depending on whether a response action is characterized as a removal action or as a remedial action. *See* 40 C.F.R. § 300.71(a)(2).

5. The motion in limine was filed by defendants Radiac Research Corp., Gates Engineering Co., Delaware County Regional Water Quality Control Authority, and Atlas Paint Co. (Tepper Enterprises). In addition to these defendants, the following defendants filed memoranda opposing the City's motion for partial summary judgment: Congoleum Corp., Apollo Metals, Inc., Atlas Paint Co. (Tepper Enterprises), CPS Chemical Co., Durabond Products Co., Precision Co., Reading Industries, Inc., Clarke Systems, and Nathan Auritt and Riva Snyderman, Trustees of the Sarah Kate Neuman Trust.

6. CERCLA defines "person" to mean:

an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body;

42 U.S.C.A. § 9601(21).

the costs incurred were consistent with the NCP. *Northeastern Pharmaceutical*, 810 F.2d at 747; *Artesian Water Co. v. Gov't of New Castle County*, 659 F.Supp. 1269, 1278–79 (D.Del.1987), *aff'd*, 851 F.2d 643 (3d Cir.1988).

In support of its argument that it should be considered a state under section 107(a)(4)(A) and thus entitled to the presumption that its cleanup activities were consistent with the NCP, the City relies upon the decision in *The Mayor and Board of Alderman of the Town of Boonton v. Drew Chemical Corp.*, 621 F.Supp. 663 (D.N.J.1985). In *Drew Chemical*, town officials filed suit pursuant to sections 107(a)(4)(A) and 107(a)(4)(B) of CERCLA for recovery of costs incurred in the cleanup of a toxic waste site.[7] 621 F.Supp. at 665. The suit also sought recovery of damages for injury to natural resources pursuant to section 107(a)(4)(C). *Id.* Drew Chemical moved for summary judgment on the basis that the town was not a state for purposes of recovery under either section 107(a)(4)(A) or section 107(a)(4)(C). *Id.* at 666. Denying the motion, the district court held that municipalities such as the town of Boonton are "within the scope of the entities Congress entrusted with standing both to recover costs for cleanup under § 9607(a)(4)(A) as well as to sue for damages for injury to destruction of, or loss of natural resources under § 9607(a)(4)(C) of CERCLA." *Id.* at 667. The court found

that, although cities and municipalities are not within the definition of "state" under CERCLA,[8] the use of the word "include" in the definition of the term "explicitly contemplates an expansion of the illustrative list by the courts to the fullest extent where to do so would be consistent with the remedial intent of the Act." *Id.* at 666. Noting that Congress "has frequently defined 'state' broadly to mean the fifty states and a variety of other governmental subdivisions and entities such as municipalities," the court concluded that "it is reasonable to expand the illustrative list introduced by the word 'includes' to encompass entities frequently explicitly within the meaning of the term 'state' as legislatively defined." *Id.* at 667. The court further noted that, although section 107(f) of CERCLA provides that liability under section 107(a)(4)(C) "shall be to the United States Government and to any State for natural resources within the State or belonging to, managed by, controlled by, or appertaining to such State,"[9] "natural resources" itself is defined in CERCLA to mean "resources belonging to ... the United States ... any State or local government, or any foreign government."[10] In light of CERCLA's definition of "natural resources," the court found it would be "anomalous ... to give states a cause of action for damages to natural resources owned by the State but ... to exclude cities from access to such a cause of action

---

7. Drew Chemical was sued as the generator of the wastes dumped at the site. 621 F.Supp. at 665.

8. Under CERCLA, the terms "United States" and "State" are defined:
   to include the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction;
   42 U.S.C.A. § 9601(27).

9. Section 107(f) provides in pertinent part:
   In the case of an injury to, destruction of, or loss of natural resources under subparagraph (C) of subsection (a) of this section liability shall be to the United States Government and to any State for natural resources

within the State or belonging to, managed by, controlled by, or appertaining to such State.... The President, or the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages. Sums recovered shall be available for use to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government or the State government ...
42 U.S.C.A. § 9607(f).

10. Section 101(16) provides:
   "natural resources" means land, fish, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States ... any State or local government, or any foreign government;
   42 U.S.C.A. § 9601(16).

**1488**

while expressly including resources owned by 'local governments' within the scope of the protected subject of § 9607(a)(4)(C)." *Id.* at 666. The court further noted that the town of Boonton could be considered to be the "authorized representative" of the state under section 107(f) and, in this capacity, could recover on its natural resources claim under section 107(a)(4)(C). *Id.* at 668. *See City of New York v. Exxon Corp.*, 633 F.Supp. 609, 619 (S.D.N.Y.1986) (allowing city to proceed pursuant to section 107(a)(4)(C) to recover for damage to natural resources). Considering the broad remedial purpose of CERCLA, the court thus held that the town could proceed pursuant to both section 107(a)(4)(A) and (C). *Id.*

Although I agree with the district court in *Drew Chemical* that the provisions of CERCLA must be liberally construed so as to effectuate the statute's broad remedial purpose, nonetheless, with regard to the burden of proving consistency with the NCP, I cannot construe section 107(a)(4)(A) to allow a municipality to proceed as a state when there is no support in either the statutory language or the legislative history of CERCLA for such a result. In attempting to discern the intent of Congress in enacting a particular statutory section, I must examine the language of the statute and, if there is ambiguity, the policy behind it.[11] The starting point is always the plain meaning of the words used and plainly, CERCLA's definition of the term "state" does not include the word "municipality."

The entities that are included—states, the District of Columbia, Puerto Rico, Guam, Samoa, the Virgin Islands, the Marianas, and United States territories and possessions—differ so vastly from villages, towns, boroughs, townships, counties, and cities as to be words of exclusion. Even accepting the broad remedial purpose of CERCLA, there is simply nothing in the statute to suggest that Congress intended to allow municipalities to recover their response costs by proceeding under section 107(a)(4)(A) rather than by proceeding as a private party under section 107(a)(4)(B).[12] In *Ohio Manufacturers' Ass'n v. City of Akron*, 801 F.2d 824 (6th Cir.1986), plaintiffs argued that an ordinance passed by the city of Akron regulating hazardous and toxic substances in the workplace was preempted by the federal Occupational Safety and Health Act (OSH Act) which expressly preempts such regulation by states. The plaintiffs contended, relying on *Drew Chemical*, that by using "includes" in defining "state," Congress had intended an expansive reading of the definition of the word and, thus, that the city's regulation was preempted under the OSH Act. *Id.* at 828–29. The trial court, and the Sixth Circuit on appeal, rejected plaintiffs' argument that the presence of the word "includes" should be interpreted to suggest that Congress intended "states" to encompass their political subdivisions. *Id.*[13] I agree with the Sixth Circuit and reject the City's reliance in this case on

11. I am cognizant of the fact that CERCLA is hardly a paradigm of clarity or precision, *Artesian Water Co. v. Gov't of New Castle County*, 851 F.2d 643, 648 (3d Cir.1988), and that the legislative history of CERCLA provides, at best, a sparse and unreliable guide to the statute's meaning. *Id.* Since the legislative history provides no guidance with regard to the allocation of burden of proof when a municipality seeks to recover its response costs, however, I am constrained to attempt to interpret Congress' motives from the language of the particular sections at issue themselves and from the policy behind CERCLA generally.

12. Unlike the *Drew Chemical* court, I am unsure that placing the burden on defendants of proving consistency with the NCP when a municipality seeks to recover response costs would, in-

deed, effectuate the purposes of CERCLA. While CERCLA in its broadest terms may be viewed as legislation to ensure the cleanup of toxic waste sites, the legislative history of the Act, as defendants point out, suggests a concern on the part of Congress that unwise and excessive clean-up activity be restrained. Requiring the City, as "any other person" to prove that its clean-up activity was consistent with the NCP would reflect this Congressional concern since only those costs consistent with the NCP would be compensable.

13. The Sixth Circuit noted that the *Drew Chemical* court had identified several reasons to justify its expansive reading of "state" which were not present in *Ohio Manufacturers Ass'n*. 801 F.2d at 829.

*Drew Chemical*'s expansive interpretation of "state."

The fact, moreover, that Congress, in other statutes, has defined "state" broadly to include municipalities is of no moment since here it has not done so. Moreover, in other sections of CERCLA, Congress clearly refers to "municipalities," "local governments," and "political subdivisions," *see, e.g.,* 42 U.S.C.A. § 9601(21) ("person" defined to mean, among other things, a municipality and political subdivision of a state); 42 U.S.C.A. § 9605(4) (referring to the "Federal, State, and local governments"), thereby suggesting both that the omission of municipalities from the definition of "state" was not accidental and that Congress had no intention of implicitly including municipalities within the word "state".[14] *See Ohio Manufacturers' Ass'n,* 801 F.2d at 829 (concluding, based in part on the fact that political subdivisions are referred to in other sections of the OSH Act, that Congress did not simply neglect to include political subdivisions from its express preemption). Finding no support in the statute for the argument that "state" should be read to mean "municipality," I am unwilling to ascribe such a definitional intent to Congress in its drafting of section 107(a)(4)(A).

Although I do not consider CERCLA's definition of "state" to be ambiguous, I am also unable to uncover any support in the legislative history of CERCLA for the proposition that Congress intended munici-palities to recover their response costs as "states" pursuant to section 107(a)(4)(A) rather than as "any other person" pursuant to section 107(a)(4)(B).[15] While, for policy purposes, such an approach might arguably seem wise, I decline to substitute my judgment for that of Congress. As the wording of section 107(a)(4)(A) clearly and unambiguously refers only to recovery of costs incurred by the "United States Government" or a "State," and as there is no clearly expressed legislative intention to the contrary, I must regard the language used to be conclusive. *In re Lorraine Johnson–Allen,* 871 F.2d 421, 427 n. 3 No. 88–160, (3d Cir.1989) (quoting *National Freight, Inc. v. Larson,* 760 F.2d 499, 503 (3d Cir.), *cert. denied,* 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985)).

I would also hesitate to find the decision in *Drew Chemical* to be, as the City urges, "dispositive" of the issue before me, namely, who has the burden of proving consistency or inconsistency with the NCP. The district court in *Drew Chemical* did not address this question and its decision to allow the town of Boonton to proceed as a state under section 107(a)(4)(A) was undoubtedly influenced by its corollary decision that municipalities should be able to recover for damage to their natural resources under section 107(a)(4)(C). In this case, the City, in contrast, has made no claim for damage to natural resources and does not seek to proceed pursuant to section 107(a)(4)(C).[16] *See* 42 U.S.C.A.

14. I note that the NCP itself, with regard to the issue of consistency of response actions, speaks in terms of a response action being "consistent with the NCP (or for a State or Federal government response, not inconsistent with the NCP)." 40 C.F.R. § 300.71(a)(2). No mention is made of the need for response actions of municipalities or political subdivisions to be "not inconsistent" with the NCP.

15. The City argues that, in enacting the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. 99–499, 100 Stat. 1613 (October 17, 1986), Congress endorsed the decision in *Drew Chemical.* The House of Representatives version of SARA amended the definition of "United States and State" specifically to exclude units of local government. H.R. No. 962, 99th Cong., 2d Sess. 185 (1986). The Senate version of the legislation did not amend the definition, and the Conference Committee adopted the Senate's version, deciding "to leave the interpretation of the definition to the courts." Conference Committee Joint Explanatory Statement at 185. I do not agree with plaintiff that this indicates an endorsement, or for that matter, a rejection by Congress of the *Drew Chemical* decision. While Congress, in the wake of *Drew Chemical,* indeed, could have explicitly amended the definition of "state" to exclude municipalities, it could have as easily amended the definition to include such units of local government. Instead, it chose to do nothing, leaving to the courts the interpretation of the term.

16. Inasmuch as the City has made no assertion of its right to recover for damage to natural resources, contrary to the *Drew Chemical* court, I make no decision as to whether a city might recover for such damage in its own right or as

§ 9607(f) (no recovery for damage to natural resources where the release of hazardous substances causing the damage occurred wholly before the enactment of CERCLA on December 11, 1980). For this additional reason, I do not find *Drew Chemical* to be controlling with regard to placing the burden of proof.[17]

Finally, the City contends that because it received approval from the Environmental Protection Agency (EPA) and CERCLA funds for the second phase of its cleanup at the Enterprise Avenue landfill, its cleanup efforts should be entitled to the presumption of consistency with the NCP.[18] I cannot agree. Section 104(d)(1) of CERCLA [19] authorizes the federal government to enter into contracts or cooperative agreements with a state or political subdivision to take Superfund-financed response action when the federal government determines that the state or subdivision has the capability to undertake such actions. 42 U.S.C.A. § 9604(d)(1). *See* 40 C.F.R. § 300.62. Once a state or political subdivision enters

into a cooperative agreement with the federal government, it is eligible to receive partial reimbursement for its expenses from the Superfund. *See* 42 U.S.C.A. § 9604(c)(3). The fact, however, that a municipality receives Superfund monies to fund its cleanup efforts does not relieve that municipality of the burden, imposed by CERCLA, of proving that the measures it took were consistent with the NCP. The EPA's determination that a party to a cooperative agreement has the capability of conducting response efforts does not mandate that the specific efforts taken pursuant to that agreement should be presumed consistent with the NCP. The purpose of requiring a party other than the federal government or a state to prove that the costs it incurred were consistent with the NCP is to ensure that cleanups are conducted in a responsible and cost-effective manner. CERCLA, as drafted, affords only the federal government and states the presumption of consistency with the NCP.[20]

---

the "authorized representative" of a state under section 107(f).

17. I note also that, in a case cited by the City in support of its position, *City of New York v. Exxon Corp.,* 633 F.Supp. 609 (S.D.N.Y.1986), the district court specifically stated that since the city of New York was proceeding pursuant to sections 107(a)(4)(B) and (a)(4)(C), it need not decide "whether the City might have maintained an action under § 107(a)(4)(A), suing under the standards applicable to state and federal governments." *Id.* at 616. The city of New York was thus obligated to "demonstrate that its present and future costs of response are 'necessary,' and are 'consistent with the national contingency plan.'" *Id.*

18. From the parties' briefs and exhibits, it appears that Phase I of the City's cleanup of the Enterprise Avenue landfill began sometime in 1979 and ceased in October, 1982, when the funding limit established by the Philadelphia Water Department for the cleanup was reached. The City never obtained EPA approval for its Phase I efforts. In 1984, the City decided to seek federal Superfund monies through the Pennsylvania Department of Environmental Resources (PA DER) to complete the cleanup at the landfill. The City's application for federal assistance was approved by the EPA, and the City entered into a cooperative agreement with the PA DER and the EPA to complete the cleanup. The City's response activities pursuant to the cooperative agreement commencing in 1984

have been referred to by the parties as Phase II of the cleanup.

19. Section 104(d)(1)(A) of CERCLA provides:

A State or political subdivision ... may apply to the President [EPA] to carry out actions authorized in this section. If the President [EPA] determines that the State or political subdivision ... has the capability to carry out any or all of such actions in accordance with the criteria and priorities established pursuant to section 9605(a)(8) of this title and to carry out related enforcement actions, the President [EPA] may enter into a contract or cooperative agreement with the State or political subdivision ... to carry out such actions.

42 U.S.C.A. § 9604(d)(1)(A).

20. I note that one court has gone so far as to hold that the federal government or a state is entitled to the presumption of consistency with the NCP only when federal or state authorities themselves perform the cleanup. In *United States v. Miami Drum Services, Inc.,* 25 E.R.C. 1469, 1986 WL 15327 (S.D.Fla.1986), Dade County, pursuant to a cooperative agreement with the EPA and the state of Florida, cleaned up a drum recycling facility at which hazardous wastes had been disposed. The EPA reimbursed Dade County from the Superfund and then sued the responsible parties to recover these costs. *Id.* at 1480. Despite the fact that the suit was brought by the federal government pursuant to section 107(a)(4)(A) of CERCLA, the district court concluded that the government was not

The City must therefore prove that the response costs it incurred in both Phase I and Phase II of its cleanup at the Enterprise Avenue landfill were consistent with the NCP in order to recover such costs from defendants.[21] An order follows.

## ORDER

AND NOW, this 11th day of April, 1989, for the reasons stated in the accompanying memorandum, it is hereby ordered:

1. The motion for partial summary judgment of plaintiff, City of Philadelphia, is denied.

2. The motion in limine of defendants is granted. The City shall bear the burden of proving that the response costs it incurred in the cleanup of the Enterprise Avenue landfill were consistent with the National Oil and Hazardous Substances Pollution Contingency Plan.

3. A pretrial conference shall be held on Thursday, April 27, 1989, at 9:00 a.m. to discuss final preparations for trial.

4. Counsel shall be prepared for trial on Monday, May 15, 1989.

entitled to the presumption that the cleanup costs incurred by Dade County were consistent with the NCP. The court stated:

> In this case, Dade County, pursuant to a cooperative agreement, performed the cleanup at the Miami Drum site. Although the cleanup may have occurred under the auspices of the federal government, the United States may not enjoy a presumption of consistency with the National Contingency Plan when it did not in fact perform the cleanup itself. Stated another way, any presumption of regularity or correctness which the United States enjoys may not automatically be imputed to those

third parties who perform cleanups on its behalf.
*Id.*

21. Requiring the City to prove that its response costs were consistent with the NCP is appropriate in this case, moreover, since the City is a responsible party under CERCLA. *City of Philadelphia v. Stepan Chemical Co., et al.,* Nos. 81–0851, 83–5493, slip. op., 1987 WL 15214 (E.D.Pa. July 28, 1987). As such, there is even less reason to accord the City a presumption that its cleanup activities at the Enterprise Avenue landfill were consistent with the NCP.