CITY OF TOLEDO, Plaintiff,

v.

BEAZER MATERIALS AND SERVICES, INC., et al., Defendant.

No. 3:90 CV 7344.

United States District Court, N.D. Ohio, W.D.

May 25, 1993.

John D. Scouten, Toledo, OH, D. David Altman, Stephen P. Calardo, Altman & Calardo, Cincinnati, OH, for City of Toledo.

Joseph A. Gregg, Eastman & Smith, Peter J. McCabe, Fuller & Henry, Toledo, OH, Chester R. Babst, III, Mindy J. Shreve, Babst, Calland, Clements & Zomnir, Pittsburgh, PA, for Beazer Materials and Services, Inc. and Beazer East, Inc.

Paul W. Schroeder, Katherine W. Delahunt, Jones, Day, Reavis & Pogue, Chicago, IL, for Interlake Corp., Interlake Companies, Inc. and Acme Steel Co.

## *MEMORANDUM OPINION*

DOWD, District Judge.

### I. *INTRODUCTION*

This action is before the Court on the motions to dismiss of defendants Beazer East, Inc. ("Beazer") and The Interlake Corporation, The Interlake Companies, Inc. and Acme Steel Company (collectively referred to as "Interlake"), plaintiff's opposition thereto, and Beazer's and Interlake's replies. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

This case is brought by the City of Toledo ("the City") for declaratory and injunctive relief and recovery of past and future costs and damages associated with alleged releases by defendants Beazer, Interlake, and the Toledo Coke Corporation ("Toledo Coke")[1] into the environment of hazardous substances, hazardous wastes, solid wastes, industrial waste, or other wastes from the Toledo Coke facility on Front Street in Toledo, Ohio ("the

Site"). The City has included federal claims under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, and the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6901, *et seq.*, as well as state law claims for environmental violations under Ohio Rev.Code § 3734.101, nuisance, and fraudulent conveyance.[2]

### II. *FACTUAL BACKGROUND*

The Site at issue in this lawsuit is located on the Front Street in Toledo. Since approximately 1902, a coke producing plant has been located on the Site. Interlake and related companies owned the Site and operated the plant from 1905 until 1978, when it sold the Site and the plant to Koppers Company, Inc., for which Beazer is the successor-in-interest. Beazer owned and operated the plant from 1978 through 1987, when Toledo Coke bought both the land and the plant.

On May 9, 1988, the City purchased from Toledo Coke a small portion of the Site ("the right-of-way property") for the purpose of widening and improving Front Street. The City alleges that, prior to its acquisition by the City, the Site had been used by defendants in the production of coke, benzene, and such chemical by-products as xylene, toluene, naphthalene. The City further alleges that environmental testing on the portion of the right-of-way property acquired by the City has confirmed high levels of subsurface contamination by benzene and other hazardous substances, and that this contamination has brought the Front Street road improvement project to a halt.

The City claims to have incurred environmental response costs of approximately $400,000 in response to the contamination. Moreover, the City alleges that it will continue to incur such response costs in the future, and that natural resources have been and will continue to be injured or destroyed as a result of the releases. Accordingly, the City

---

1. Toledo Coke has not filed a motion to dismiss in this action.

2. The City's fraudulent conveyance claim is brought solely against Toledo Coke, and is not at issue in Beazer's and Interlake's motions to dismiss.

brought this six-count amended complaint against Interlake, Beazer, and Toledo Coke to compel the defendants to bear the financial burden for the investigation and remediation of the contamination of the right-of-way property and at the plant itself, which, the City alleges, unless remediated, will continue to cause or threaten to cause releases to the environment and the right-of-way property.

## III. *THE MOTION TO DISMISS STANDARD*

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2A J. Moore, W. Taggert & J. Wicker, *Federal Practice,* 12.08 (2d ed. 1985).

## IV. *LAW AND DISCUSSION*

A. *Count One—Response Cost Under CERCLA Section 107*

1. *Natural Resources Harm*

Count One of the City's first amended complaint alleges a cause of action under section 107 of CERCLA, 42 U.S.C. § 9607. The City claims that the releases and threatened releases of defendants' hazardous substances at and from the Site have caused the City to incur response costs. Included in the City's claim for response costs is a claim for damages to natural resources, assessment of which the City claims is ongoing. Beazer and Interlake move to dismiss the City's claim for natural resources damages.

Section 107(a)(4)(C) states:

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

\* \* \* \* \* \*

(C) damages for injury to, destruction of, or *loss of natural resources,* including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

42 U.S.C. § 9607(a)(4)(C) (emphasis added).

Further, section 107(f)(1) provides:

In the case of an injury to, or destruction of, or loss of natural resources under [107(1)(4)(C)] liability *shall be to the United States Government and to any State* for natural resources within the State or belonging to, managed by, controlled by or appertaining to such State. . . . The President, or the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages.

42 U.S.C. § 9607(f)(1) (emphasis added).

Section 107(f)(2) allows the President of the United States or the Governor of a State to designate officials to act on behalf of the public as trustees for natural resources. The terms "United States" and "State," as defined by section 101(27), include "the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction."

Defendants Interlake and Beazer argue that the City's claim for natural resources damages should be dismissed because section 107(f)(1) limits recovery for such harm to either the United States Government or the State in which the resources lie. Defendants argue that the City is excluded from the definition of "State," and has not been designated a trustee for the natural resources.

Thus, the defendants contend, the City cannot bring this claim for harm to natural resources.

Whether a political subdivision can in fact bring an action pursuant to section 107 of CERCLA for harm to natural resources is a question that has been addressed by a number of district courts in other circuits, but not in the Sixth Circuit. The City urges this Court to accept the holdings of the district courts in *New York v. Exxon Corp.,* 633 F.Supp. 609 (S.D.N.Y.1986) and *Boonton v. Drew Chemical Corp.,* 621 F.Supp. 663 (D.N.J.1985).

In *Boonton,* Judge Ackerman held that governmental subdivisions, such as municipalities, are encompassed within the meaning of "state." The *Boonton* court observed that, while the definition of "state" in CERCLA does not expressly mention local governments, the definition was not an inclusive definition. Judge Ackerman deemed it appropriate to expand the list of entities set forth in 101(27) in order to effectuate the remedial purpose of CERCLA. *Id.* at 666.

Judge Ackerman pointed out that the definition of "natural resources" in CERCLA included natural resources belonging to local governments. It would, therefore, be anomalous to deny relief to local governments under section 107 when natural resources owned by the local governments are expressly included within the protected coverage of section 107(a)(4)(C). Thus, Judge Ackerman concluded that a municipality is a "state" within the meaning of section 107(a)(4)(C), or, alternatively, that a municipality is an "authorized representative of a state" under section 107(f), and is entitled to bring an action for natural resource damages. *Id.* at 667–68.

The holding of the *Boonton* court, and the rationale therefor, were echoed in *New York v. Exxon Corp.,* 633 F.Supp. 609, where the court held that the City of New York could bring an action for natural resource damages under section 107(a)(4)(C).

Interlake and Beazer argue that this Court should reject the holdings of *Boonton* and *New York,* and instead follow the holdings in *Philadelphia v. Stepan Chemical Co.,* 713 F.Supp. 1484 (E.D.Pa.1989) and *Bedford v. Raytheon Co.,* 755 F.Supp. 469 (D.Mass. 1991). In *Philadelphia,* the court relied primarily on the plain meaning of the statute, and held that the term "state" does not include "municipality," stating that the court cannot allow a municipality to proceed as a state when there is no support in either the statutory language or the legislative history of CERCLA for such a result. *Id.* at 1488. The *Philadelphia* court examined the definition of "state" included in CERCLA, and concluded that the entities included within that definition—the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and United States territories or possessions—"differ so vastly from villages, towns, boroughs, townships, countries, and cities as to be words of exclusion." *Id.*

Additionally, the *Philadelphia* court observed that, in other sections of CERCLA, Congress explicitly uses terms such as "municipalities," "local governments," and "political subdivisions." In particular, CERCLA's definition of "person" includes municipalities and political subdivisions of a state. The *Philadelphia* court concluded that "the omission of municipalities from the definition of 'state' was not accidental and that Congress had no intention of implicitly including the municipalities within the word 'state.'" *Id.* at 1489. The *Philadelphia* court found no support in CERCLA's legislative history for the proposition that "state" should include its governmental subdivisions for purposes of recovery under section 107(a)(4)(A), and, therefore, deemed the unambiguous statutory language conclusive. *Id.*

The *Bedford* court agreed with the *Philadelphia* court, and observed that, since the decisions of the *New York* and *Boonton* courts, Congress has amended CERCLA by passing the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). SARA created a mechanism for states to appoint natural resources trustees to bring lawsuits seeking natural resource damages. The *Bedford* court stated:

Prior to SARA, a policy-driven, expansive interpretation of the word "State," de-

signed to include local governments, was the only way a municipality could bring a natural resource damages action under CERCLA. In SARA, Congress provided an express means for states to bring natural resource damage actions by permitting the states to designate "natural resource trustees." 42 U.S.C. § 9607(f). *Bedford*, 755 F.Supp. at 472. SARA, therefore, undermined the driving assumption at work in *New York* and *Boonton*: that a broad interpretation of "state" was needed to permit municipalities to present such claims. *Id.*

The *Bedford* court also found it important that, while CERCLA is a "far-reaching remedial statute," its legislative history also suggests a concern on the part of Congress that unwise and excessive clean-up activity be restrained. *Id.* Accordingly, with respect to access to remedies and burdens of proof, CERCLA clearly differentiates between the United States and the states, on the one hand, and any other person, on the other. *Id.* Considering this in light of the fact that CERCLA's definition of "person" includes municipalities and political subdivisions of a state, the *Bedford* court held that when Congress enacted CERCLA, it differentiated between the federal and state governments and any other person with regard to access to remedies. Thus, the *Bedford* court concluded that the town of Bedford could not bring a CERCLA action for harm to natural resources. *Id.*

Essentially, the debate presented by the City, Interlake, and Beazer consists of two district courts concluding that cities may bring natural resource damage actions, and two concluding the opposite. Since the parties filed their motions and responses in the instant matter, however, at least two other district courts have addressed the issue. *Rockaway v. Klockner & Klockner*, 811 F.Supp. 1039 (D.N.J.1993); *Fox River Grove v. Grayhill, Inc.*, 806 F.Supp. 785 (N.D.Ill. 1992). While both of these courts followed the *Bedford* and *Philadelphia* courts, the *Rockaway* decision is particularly instructive because it was handed down by Judge Ackerman, the same judge who wrote the *Boonton* decision in 1985. In *Rockaway*, Judge Ack-

erman reexamines his holding in light of the holdings in *Bedford* and *Philadelphia* and in light of SARA, as discussed above, and concludes that "the approach of the [*Philadelphia* court] is the better one. I am, therefore, constrained to retreat from my earlier decision in *Boonton.*"

█ This Court agrees with every court that has addressed the issue at hand since the enactment of SARA that Congress did not intend to bestow upon municipalities the standing to bring actions for harm to natural resources. To hold otherwise would unnecessarily contradict the plain meaning of CERCLA. This Court agrees with the *Rockaway, Bedford,* and *Philadelphia* courts, and concludes that the City may not bring this action for harm to natural resources. Accordingly, Count One will be dismissed *to the extent that* it seeks recover for harm to natural resources.

### 2. *Ownership Interest in the Site*

█ Beazer and Interlake also claim that Count One should be dismissed because the City cannot recover section 107 response costs relating to the portion of the Site in which the City has never had held an ownership interest.

The City counters that nowhere in CERCLA is there a requirement that a party seeking to recover response costs must own any or all of the property on which hazardous substances have been released or from which they threaten to be released. An adjoining property owner who has contamination on its property, the City contends, is entitled to bring an action for recovery of response costs under CERCLA if it has incurred response costs in response to a threatened release from a neighboring property.

Section 107(a)(4)(B) states that the persons mentioned in section 107(a)(1) through (4) shall be liable for "any other necessary costs of response incurred *by any other person*" consistent with the NCP. "Person," as stated above, is defined as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State,

or any interstate body." 42 U.S.C. § 9601(21) (emphasis added). Thus, the City is not only *not* excluded from section 107 actions, it is specifically included in such actions.

Several courts have stated that, to recover response costs in a private response recovery action under section 107 of CERCLA, a private party must prove that (1) the defendants fall within one or more of the categories of "covered persons" under section 107(a)(1)–(4); (2) the site in question is a "facility" as defined in section 101(9) of CERCLA; (3) a release or threatened release of hazardous substances occurred on the subject site; (4) the release or threatened release caused the private party to incur costs; (5) such costs were necessary costs of response; and (6) the party's actions were consistent with the National Contingency Plan ("NCP"). *Anspec Co. v. Johnson Controls, Inc.*, 788 F.Supp. 951, 955 (E.D.Mich.1992) (quoting *Artesian Water Co. v. New Castle County*, 659 F.Supp. 1269, 1278–79 (D.Del.1987), *aff'd* 851 F.2d 643 (3rd Cir.1988)). None of these requirements demands ownership of the property at issue.

Moreover, the City, pursuant to section 113(g)(2), 42 U.S.C. § 9613(g)(2), is within its rights in seeking declaratory relief for future remediation costs associated with the entire Site.

Beazer, in its reply brief in support of its motion to dismiss, states that it is not claiming that it is necessary to be an "owner" to recover response costs under CERCLA. Rather, Beazer states, "the basis for Beazer's motion to dismiss on this issue is that the City has not and *will not* incur response costs relating to remediation of that portion of the Site in which the City has no interest." Reply Brief at 4. The City has, however, alleged that it has incurred, and will continue to incur, such response costs. Throughout Count One of the amended complaint, the City asserts that it has incurred and will continue to incur, response costs for assessment, testing, and remediation of "the Site." Complaint at ¶ p 18–24. "The Site" is defined as a "facility ... on Front Street currently owned and operated by Toledo Coke Corporation which Site was formerly owned

by the other defendants or their predecessors-in-interest. Amended Complaint at ¶ 1. Given that, in considering a motion to dismiss, this Court is required to accept as true the allegations in the complaint, Beazer's argument on this point is not well-taken.

Hence, Beazer's and Interlake's motion to dismiss on the grounds that the City lacks a requisite ownership interest is not well-taken, and will be denied.

**B.** *Count Two—Citizen Suit Under RCRA Section 7002(a)*

Count Two of the City's amended complaint alleges a citizen suit under section 7002(a) of RCRA, 42 U.S.C. § 6972(a), which provides that

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—
>
> (1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or
>
> (B) against any person, including the United States, and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; ...

Interlake and Beazer argue that they cannot be presently in violation of RCRA because they are not present owners of the property or the plant. Moreover, they contend that an administrative action instigated by the Ohio Environmental Protection Agen-

cy ("Ohio EPA") bars the City's RCRA citizen suit.

### 1. *Is An Ongoing Violation Required Under Section 7002(a)?*

#### a. *Section 7002(a)(1)(B)*

■ It is clear that section 7002(a)(1)(B) citizen suits for imminent and substantial endangerment need not meet the present violation hurdle. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 57 n. 2, 108 S.Ct. 376, 380 n. 2, 98 L.Ed.2d 306 (1987); *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1159 (9th Cir.1989). An imminent hazard citizen suit will lie against any "past or present" RCRA offender "who has contributed or who is contributing" to "past or present" solid waste handling practices that "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Therefore, under an imminent hazard citizen suit, the endangerment must be ongoing, but the conduct that created the endangerment need not be. *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1305 (2nd Cir.1993). Given that the City has alleged that the ongoing presence of hazardous wastes disposed of by the defendants presents an imminent and substantial endangerment, and that this Court must accept the City's allegations as true, neither Interlake nor Beazer has a colorable argument that the City's section 7002(a)(1)(B) action should be dismissed.

#### b. *Section 7002(a)(1)(A)*

Both Interlake and Beazer argue that the City's section 7002(a)(1)(A) claims should be dismissed because the statute states that the defendant must be "alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order."

Because they are former owners of the property, Beazer and Interlake argue that the City cannot bring a section 7002(a)(1)(A) citizen suit against them.

#### (1) *Against Interlake*

■ It is not clear that the City is even alleging a section 7002(a)(1)(A) citizen suit against Interlake. The City alleges in its amended complaint that Beazer and Toledo Coke are persons, pursuant to section 6972(a)(1)(A).[3] The City does not, however, allege that Interlake is such a person within the meaning of section 6972(a)(1)(A). Moreover, in its motion to dismiss, Interlake states that the City has agreed that its cause of action pursuant to section 7002(a)(1)(A) applies only to Beazer and Toledo Coke, and attaches a letter from Interlake to the City explaining this understanding.[4] The City has not disputed such an understanding. Therefore, this Court finds that the amended complaint does not allege a cause of action against Interlake pursuant to section 6972(a)(1)(A).

#### (2) *Against Beazer*

■ With respect to its cause of action against Beazer under section 7002(a)(1)(A), the City alleges that Beazer and Toledo Coke violated numerous RCRA sections by not disclosing or furnishing appropriate information regarding hazardous wastes disposed of at the Site; by not securing a permit for the on-site disposal of hazardous waste; by not preparing and maintaining a closure plan; by not maintaining requisite groundwater monitoring; by not maintaining requisite financial assurances; and by not implementing corrective action. Further, the City alleges that Beazer engaged in open dumping, and failed to upgrade or conform an open dump to the federal law or approved state plan. The City claims that such violations are ongoing, and thus appropriately brought under section 7002(a)(1)(A).

---

3. While the City's complaint actually states that "Beazer and Toledo Coke are persons, pursuant to 42 U.S.C. *6972(1)(A),*" this Court assumes that the City meant to cite to section 6972(a)(1)(A).

4. This is in contrast to a similar assertion by Interlake in its memorandum in support of its motion to dismiss that the City had agreed that it was not asserting a nuisance claim against Inter-

lake, to which the City replied, in its memorandum in opposition, that indeed it was and is pursuing the nuisance claim against Interlake. This Court assumes that the City would have made a similar correction had Interlake been mistaken about the City's intention not to pursue a section 7002(a)(1)(A) claim against it.

Beazer claims that the City cannot maintain a section 7002(a)(1)(A) citizen suit against it because it is not the present owner or operator of the Site, and therefore cannot have the "ongoing violation" that is required by section 7002(a)(1)(A). The City, Beazer contends, is basing its section 7002(a)(1)(A) citizen suit on "wholly past" actions. Therefore, the City's section 7002(a)(1)(A) citizen suit is barred by *Gwaltney.*

The City counters that its complaint makes clear that the City alleges that the releases and disposal are ongoing, and that Beazer remains liable for the *ongoing failure* to, among other things, disclose information about the disposal, failure to obtain a permit for on-site hazardous waste, and failure to prepare and maintain a closure plan. Ongoing disposal, the City argues, occurs by ongoing leaking of hazardous wastes. The City points to the RCRA definition of "disposal," which includes "leaking." 42 U.S.C. § 6903(3). The City claims that this Court must accept as true the allegations of the complaint that hazardous wastes deposited by Beazer onto the ground continue to migrate and leak.

■ First, this Court recognizes the need for an ongoing violation in order to bring a citizen suit under section 7002(a)(1)(A) of RCRA. The Supreme Court in *Gwaltney* acknowledged that the language in the citizen suit provisions of the Clean Water Act and § 7002(a)(1)(A) of RCRA are identical, yielding the same requirement that plaintiff allege an ongoing or intermittent violation of the relevant statute. *Gwaltney*, 484 U.S. at 57 and n. 2, 108 S.Ct. at 380 n. 2. Thus, the question at issue before this Court is not whether an ongoing violation is required, but rather, whether the continued presence of unremediated hazardous wastes, regardless of the fact that they were disposed of several years ago by a prior owner of the Site, constitutes an ongoing violation of RCRA.

This precise question was at issue is a recent district court case in New York. In *Gache v. Harrison*, 813 F.Supp. 1037 (S.D.N.Y.1993), the defendants claimed that, because the Town of Harrison's dumping activities ended in 1989, the plaintiff alleged only past violations, not actionable under sec-

tion 7002(a)(1)(A) of RCRA. Plaintiff argued that whether the Town's violation of RCRA is ongoing is a question of fact.

The court held that, under the plain meaning of the statute, the continued presence of illegally dumped waste could constitute being in violation of a RCRA regulation or standard. *Id.* at 1041. The court pointed out that section 7002(a)(1)(A) requires that "[a]ny action under paragraph (a)(1) of this subsection shall be brought in the district court in which the alleged violation *occurred.*" 42 U.S.C. § 6972(a)(1) (emphasis added). *Id.* The Court found this passage, stated in the past tense, to clearly imply actions that have already occurred but whose consequences persist. *Id.* "Congress," the court observed, "could easily have constructed this provision to rule out materials already discharged as a continuing violation by using a phrase such as 'in which the alleged violation is occurring.'" *Id.* The court held that "improperly discharged wastes which continue to exist unremediated represent a continuing violation of RCRA." *Id.*

The *Gache* court addressed the effect of *Gwaltney* on this issue, stating that, while certainly *Gwaltney* and its progeny stand for the proposition that wholly past violations cannot be the subject of RCRA citizen suits under section 7002(a)(1)(A), the *Gwaltney* court did not detail what sort of actions could constitute a continuing violation. *Id.* Thus, the central issue becomes whether the defendants' actions should be considered wholly past violations. In answering this question, the court rejected as overly narrow the Town's argument that because the act of dumping had ceased, the violations were wholly past. The court opined

*The continued presence of illegally dumped materials on plaintiff's property could constitute a continuing violation of RCRA. The environmental harms do not stem from the act of dumping when waste materials slide off the dump truck but rather after they land and begin to seep into the ground, contaminating the soil and water. So long as waste remain in the landfill threatening to leach into the sur-*

rounding soil and water, a continuing violation surely may exist.

*Id.*

This holding of the *Gache* court is consistent with that of other recent district court holdings. In *North Carolina Wildlife Federation v. Woodbury*, 29 Env't Rep.Cas. (BNA) 1941, 1989 WL 106517, 1989 U.S. Dist. LEXIS 13915 (E.D.N.C.1989), the court held that "it is not the physical act of discharging dredge wastes itself that leads to the injury giving rise to citizen standing, but the consequences of the discharge in terms of the lasting environmental degradation." *Id.* at 1943.

Similarly, the court in *Fallowfield Development Corp. v. Strunk*, Case No. 89–8644, 1990 WL 52745, 1990 LEXIS 4820 (E.D.Pa. 1990), held that "[i]f a person disposes of hazardous waste on a parcel of property, the hazardous waste remains in that property insidiously infecting the soil and groundwater aquifers. In other words, the violation continues until the proper disposal procedures are put into effect or the hazardous waste is cleaned up." *Id.* \* at 10, 1990 LEXIS at \*29. The court continued:

> Because improperly disposed of hazardous waste remains a remediable threat to the environment, this Court believes that Congress intended to allow citizen suits under section 7002 of RCRA for past violations where the effects of the violation remain remediable. To conclude otherwise would allow an owner or operator of a hazardous waste facility to avoid liability under section 7002 by claiming that the last improper disposal of hazardous waste prior to the commencement of the suit was the last disposal, making the violations wholly past. In this way, the owner or operator could easily avoid liability by simply not disposing of any hazardous waste after the commencement of a citizen suit. This Court does not believe that Congress intended to allow the owner or operator of a hazardous waste facility to have complete control over his liability under section 7002.

*Id.*

This Court agrees with the *Fallowfield, North Carolina Wildlife Federation,* and *Gache* courts, and finds that, taking the City's allegations in Count Two as true, the alleged violations of RCRA state a claim under section 7002(a)(1)(A) of RCRA. Whether the City can prove that Beazer's actions constitute continuing harm is a question of fact that cannot be decided on a motion to dismiss. This Court is holding only that the disposal of wastes can constitute a continuing violation as long as no proper disposal procedures are put into effect or as long as the waste has not been cleaned up and the environmental effects remain remediable.

### 2. Administrative Action as Preclusive of City's Section 7002(a)(1) Action

Beazer and Interlake argue that, regardless of whether there are ongoing violations, Count Two must be dismissed because there is an Ohio EPA proceeding against the current owner of the coke plant, Toledo Coke.

Section 7002(b)(1)(B) of RCRA provides:

> [A] citizen suit cannot be commenced if the Administrator or the State has commenced and is diligently prosecuting a civil or criminal action *in a court of the United States or a State* to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

42 U.S.C. § 6972(b)(1)(B).

In this case, Ohio EPA has initiated an administrative proceeding against Toledo Coke concerning an alleged "waste pile" and Toledo Coke's obligations under RCRA to file a closure plan for that waste pile. Beazer and Interlake claim that one of the specific issues being litigated in that action, which, at the time the motions to dismiss were filed, was pending before the Environmental Board of Review ("EBR"), is whether the substances found at an allegedly hazardous waste pile were actually "hazardous wastes" within the meaning of RCRA.

The City counters that the EBR action is not a court action, and, therefore, does not preclude a RCRA citizen suit. Moreover, the hazardous waste pile at issue in the administrative appeal is merely one of many environmental problems contributing to Site-wide

contamination. The limited appeal of the Director's Findings and Orders relate to nothing more than the filing of an isolated closure plan for one potential source of contamination—the waste pile. The RCRA citizen suit, however, alleges multiple violations at the Site, and seeks widespread remediation of the entire Site, including multiple sources of contamination.

 It is a "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Moreover, when a court finds the language of a statute to be clear and unambiguous, "judicial inquiry is complete except in rare and exceptional circumstances." *Friends of Earth v. Conrail,* 768 F.2d 57, 62–63 (2nd Cir.1985) (quoting *Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984)).

 The plain language of section 7002(b)(1)(B) states that a citizen suit cannot be preempted if there is civil or criminal action in a *court.* There has been no showing of exceptional circumstances in the instant case. Thus, this Court holds that a state environmental agency's prior administrative action does not preclude a RCRA citizen suit because the plain meaning of 42 U.S.C. § 6972(b)(1)(B) is that citizen suits are precluded only by "civil or criminal action in court," and not by an action of Ohio EPA in the EBR. In so holding, this Court is in agreement with several other courts that have considered this issue. *See, e.g., Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1525 (9th Cir.1987); *Friends of Earth,* 768 F.2d 57; *Proffitt v. Commissioners, Township of Bristol,* 754 F.2d 504, 506–07 (3rd Cir.1985); *Lykins v. Westinghouse Elec. Corp.,* 715 F.Supp. 1357, 1359 (E.D.Ky.1989); *Maryland Waste Coalition v. SCM Corp.,* 616 F.Supp. 1474, 1478–81 (D.Md.1985).

This Court also notes that the focus of the EBR proceeding is very narrow in scope, and deals with only the waste pile. Count Two of this action, by contrast, is very broad in scope, and deals with the entire Site. Additionally, it appears that the parties to the administrative action were to file a joint motion to dismiss the action by June 30, 1992, pending the submission of the closure plan by June 22, 1992, to which Toledo Coke had agreed. *See* Joint Status Report, Exhibit A to Plaintiff's Memorandum in Opposition to Beazer's Motion to Dismiss the Amended Complaint. Thus, it appears that the issue which defendants claim was being litigated—whether the substances found at an allegedly hazardous waste pile were actually "hazardous wastes" within the meaning of RCRA—was never actually litigated.

This Court finds that Count Two of the amended complaint is not precluded by the administrative action. Thus, defendants' motions to dismiss Count Two are not well taken, and will be denied.

### C. *Count Three—Nuisance*

 In Count Three of the amended complaint, the City seeks to abate an alleged nuisance under Section 715.44 of the Ohio Revised Code. Given that this action is before the Court on a motion to dismiss, this Court must accept as true the City's contention that the actions of Beazer and Interlake created a nuisance on the property. Beazer and Interlake have advanced several reasons for dismissal of Count Three. This Court, however, need reach only the first reason—that Beazer and Interlake are prior owners of the Site.

Beazer and Interlake argue that they cannot be liable for a nuisance created on the property at issue because they are no longer owners of the property. Nuisance, they contend, does not apply to prior landowners. While the parties have cited numerous cases in support of their arguments, none of which are precisely on point, none of the parties has identified the relevant section of the Restatement (Second) of Torts. Section 840A of the Restatement provides:

(1) A vendor or lessor of land upon which there is a condition involving a nuisance for which he would be subject to liability if he continued in possession is subject to

liability for the continuation of the nuisance after he transfers the land.

(2) If the vendor or lessor has created the condition or has actively concealed it from the vendee or lessee the liability stated in Subsection (1) continues until the vendee or lessee discovers the condition and has reasonable opportunity to abate it. Otherwise the liability continues only until the vendee or lessee has had reasonable opportunity to discover the condition and abate it.

Accepting as true the City's allegations of nuisance on the property, this Court concludes that, pursuant to subsection (1) of section 840A, Beazer and Interlake, as vendors of the land, would be subject to liability for the nuisance alleged by the City if Beazer or Interlake continued to be in possession of the property. Thus, under section 840A(1), both Beazer and Interlake were liable for at least some period of time following their respective sales of the land.

However, any liability Beazer or Interlake may have had is limited by section 840A(2). In its amended complaint, the City alleges that Toledo Coke had knowledge of the contamination of the property. Amended Complaint at ¶ 13. Thus, pursuant to section 840A(2), Interlake and Beazer, as the vendees of the property, are no longer liable for the nuisance created on the property. Accordingly, Count Three of the amended complaint will be dismissed as against Beazer and Interlake.

D. *Count Four—Citizen Suit Under Ohio Rev.Code Section 3734.101*

 In Count Four, the City asserts a claim under Ohio Revised Code § 3734.101, the Ohio state law equivalent of a citizen suit under RCRA. Section 3734.101 authorizes a private cause of action under certain circumstances and conditions against any person "that is alleged to be in violation of this chapter or a rule, permit, license, variance, or order issued or adopted under the," The City's amended complaint lists several allegations that Beazer and Interlake violated provisions of the Code while it owned the property.

Beazer and Interlake assert that this Court lacks jurisdiction over Count Four because section 3734.101(E) provides that original jurisdiction over actions under section 3734.101(E) is restricted to the court of common pleas of the county in which the alleged violation occurs.

Beazer and Interlake are correct that this Court does not have *original* jurisdiction over Count Four. This Court does, however, have supplemental jurisdiction over Count Four pursuant to 28 U.S.C. § 1367. Section 1367 states, in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Because the City's section 3734.101 claim is so related to its federal claims that they form part of the same case and controversy, this Court accepts supplemental jurisdiction over the City's state law claims in Count Four. Beazer's and Interlake's motions to dismiss Count Four, therefore, will be denied.

E. *Count Five—Citizen Suit Under CERCLA Section 310*

The City, in Count Five of the amended complaint, alleges a cause of action under the CERCLA citizen suit provision, section 310 of CERCLA, 42 U.S.C. § 9659, based on the alleged failure of the defendants to fulfill the reporting requirements of section 103(c) of CERCLA, 42 U.S.C. § 9603(c).

Section 310(a) provides:

[A]ny person may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of any standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter ...

42 U.S.C. § 9659(a)(1).

Section 103(c) provides:

Within one hundred and eighty days after December 11, 1980, any person who owns or operates or who at the time of disposal owned or operated, or who accepted hazardous substances for transport and selected, a facility at which hazardous substances ... are or have been stored, treated, or disposed of shall, unless such facility has a permit issued under, or has been accorded interim status under, subtitle C of the Solid Waste Disposal Act [42 U.S.C.A. § 6921 et seq.], notify the Administrator of the Environmental Protection Agency of the existence of such facility, specifying the amount and type of any hazardous substance to be found there, and any known, suspected, or likely releases of such substances from such facility.... Any person who knowingly fails to notify the Administrator of the existence of any such facility shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both. In addition, any such person who knowingly fails to provide the notice required by this subsection shall not be entitled to any limitation of liability or to any defenses to liability set out in section 9607 of this title.

Based on these two provisions, the City argues that defendants Beazer and Interlake not only failed to fulfill the reporting requirements set forth in section 103(c) by the required date, June 9, 1981, but that they have *never* fulfilled the reporting requirement. Thus, the City contends, the defendants are presently in violation of section 103(c) of CERCLA. The City is seeking enforcement of section 103(c) against the defendants, and the imposition of civil penalties and any other action as may be necessary to correct the violations, as well as the cost of litigation, including reasonable attorney and expert witness fees.

1. *Lack of Continuing Violation*

Defendants Interlake and Beazer have moved to dismiss Count Five, arguing that they are not presently in violation of section 103(c). Beazer and Interlake argue that the "in violation" language of section 310 requires a present violation of CERCLA. *See, e.g., Lutz v. Chromatex, Inc.,* 718 F.Supp. 413

(M.D.Pa.1989). They claim that the section 103(c) reporting requirement was a one-time reporting obligation for which a violation, if it occurred, occurred on June 9, 1981.

The City counters that, because the required reporting has never taken place, the defendants are currently, and have been since June 9, 1981, in violation of section 103(c) of CERCLA.

■ It is evident that a citizen suit under CERCLA cannot be based on wholly past actions. *See, e.g., Lutz,* 718 F.Supp. at 421. That is not the issue here, however. Rather, the issue is whether the failure to fulfill the section 103(c) reporting requirement constitutes a wholly past or an ongoing violation of CERCLA. This issue appears to be one of first impression in the Sixth Circuit.

First, in support of defendants' argument that the section 103(c) reporting requirement was a one-time obligation, defendants point to 40 Fed.Reg. 22144 (1981), in which the U.S. EPA stated that "[t]he purpose of the [section 103(c) ] notification, therefore, is to assist EPA in developing an inventory of hazardous waste sites and to help facilitate the development of priorities for attention and possible response action concerning those sites under the Act. The notifications received will compliment the Agency's ongoing site discovery and discovery program." Defendants conclude from this that the purpose of the section 103(c) reporting requirement was to establish an initial inventory of potential clean-up sites in 1981, and the requirement has no ongoing purpose or function.

Further, Beazer and Interlake claim that this Court must consider the entire statute and the goals and policy behind it. Because section 103(a) establishes an ongoing reporting requirement relating to releases of hazardous substances, to interpret section 103(c) to establish an initial reporting requirement *and* an ongoing reporting obligation would render section 103(a) redundant. To interpret section 103(c) as establishing an ongoing reporting requirement would ignore its relation to section 103(a), as well as the accepted rules of statutory construction.

Beazer and Interlake contend that further evidence that section 103(c) only imposed a one-time reporting obligation is found in section 109(b), which was added to CERCLA in SARA. Section 109(b) provides for civil penalties for each day certain violations of CERCLA continue. Although section 109(b)'s penalty provisions expressly apply to violations of the notice requirements of sections 103*(a)* and 103*(b)*, they do not apply to section 103*(c)*. Beazer, therefore, argues that

> If the original intent of Section 103(c) was to impose an ongoing obligation, Congress, in 1986, certainly would have included Section 103(c) among the 'ongoing' violations subject to civil penalties provided for in Section 109(b). Instead, recognizing that Section 109(c) was only a one-time notice requirement, Congress excluded a violation of Section 103(c) from the penalty provisions in Section 109.

Reply Brief at 7.

Additionally, Beazer quotes the legislative history of CERCLA, in which U.S. EPA's Assistant Administrator for Water and Waste Management stated:

> On the controlled site side, the duty to give notice on the part of the owner-operator is not when it is released to the environment, because he may not know. Rather, it is the presence on his land of that kind of material. If he knows that he has that material on his site, on his land, he has a duty to give notice.
>
> *It is a one-shot notice requirement,* but we think it is a much more efficient system than we are presently utilizing, where we go out to find them or hear of them at random.

Senate Comm. on Environment and Public Works, Subcomm. on Resource Protection and Environmental Pollution, Comprehensive Environmental Response Compensation and Liability Act of 1980, 97th Cong., 2d Sess. (1979), *reprinted in* Legislative History of CERCLA, at 71–72 (1983) (statement of Thomas C. Jorling) (emphasis added).

In countering defendants' arguments, the City contends that section 103(c) serves an ongoing purpose of providing a public notification to the U.S. EPA that can be used to help identify, prioritize, and respond to past hazardous substance disposal sites. Such a reading does not, the City argues, render section 103(a) redundant. Section 103(a) is prospective in nature and only requires reporting of new releases, while section 103(c) requires notification of past releases that occurred before June 9, 1981.

The City argues that, under the defendants' rationale, section 103(c) makes no sense because it engenders an incentive to ignore the reporting deadline, and then claim that the violation is in the past, and cannot be the subject of a section 310 citizen suit.

In support of its position, the City quotes three U.S. EPA documents that support its contention that section 103(c) imposes a continuing duty. First, the City quotes a 1984 letter from the Associate General Counsel for U.S. EPA Solid Waste and Emergency Response Division. Such memorandum contains the following question and answer:

> Does Section 103(c) of CERCLA require owners, operators, and transporters (including states) to notify EPA of the existence of sites containing hazardous wastes identified after the statutory deadline.
>
> *Response:* As discussed above, section 103(c) of CERCLA requires certain persons to notify EPA of the existence of facilities which treated, stored or disposed of hazardous substances by June 9, 1981. Any person who knowingly fails to notify EPA of the existence of such facilities is subject to criminal penalties. *Persons who identify sites after June 9, 1981 are required to notify EPA of the existence of those sites because the section 103(c) penalty provisions are not limited to sites identified by June 9, 1981 statutory deadline.*

Letter from Lisa K. Friedman, Associate General Counsel, U.S. EPA Solid Waste and Emergency Response Division, to Barry R. Bedride, Acting Assistant General Counsel, U.S. General Accounting Office (December 28, 1984) (emphasis added).

Similarly, a June 9, 1988 legal memorandum from a project officer of U.S. EPA's Office of Solid Waste and a deputy project

officer of the Office of Emergency & Remedial Response states as follows:

> Under CERCLA Section 103(c), "any person who owns or operates or who at the time of disposal owned or operated, or who accepted hazardous substances for transport and selected a facility at which hazardous substances (as defined in Section 101(14)(c) of this title) are or have been stored, treated, or disposed of ... unless such a facility has a permit issued, or has been accorded interim status under Subtitle C of the Solid Waste Disposal Act" was required to notify the EPA of the existence of such facilities by June 9, 1981. Persons who knew of such facilities and failed to report them to the Agency by that date have a continuing obligation to notify the Agency of the facilities.

Memorandum from Thea McManus, Project Officer, U.S. EPA Office of Solid Waste, and Hubert Watters, Deputy Project Officer, U.S. EPA Office of Emergency & Remedial Response to numerous addressees (June 9, 1988) (emphasis added).

Finally, the City cites to a third U.S. EPA internal memorandum. This memorandum is again from project officers of the Office of Solid Waste and the Office of Emergency and Remedial Response, and contains the following question and answer:

> In 1985, buried drums containing a CERCLA hazardous substance are discovered at a non-RCRA facility. Is the property required by CERCLA to notify EPA or the National Response Center (NRC)?

> The property owner must notify either EPA or the NRC depending upon the type of substance buried. If the buried CERCLA substances are hazardous waste, then discovery triggers notification obligations under Section 103(c) of CERCLA. Section 103(c) requires that any person who owns or operates a facility not regulated under RCRA interim status or a permit at which hazardous substances, as defined in Section 101(14)(C) of CERCLA (i.e. RCRA wastes) are or have been stored, treated or disposed of, notify EPA. This requirement applies to all such facilities,

regardless of the time at which the waste was placed in the ground. ·

Memorandum from Carolyn Barley, Project Officer, U.S. EPA Office of Solid Waste, and Barbara Hostage, Project Officer, U.S. EPA Office of Emergency & Remedial Response to numerous addressees (Dec. 15, 1985).

The City argues that the agency interpretation of the section 103(c) reporting requirement should be accorded substantial weight. *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976) (citing *Scenic Hudson Preservation Conference v. Fed'l Power Comm'n*, 453 F.2d 463, 468–69 (2d Cir.1971), *cert. denied*, 407 U.S. 926, 92 S.Ct. 2453, 32 L.Ed.2d 813 (1972)). Accordingly, the City argues that the defendants are in continuing violation of section 103(c), and such continuing violation entitles the City to bring this section 310 citizen suit.

 This Court initially notes that neither the legislative history nor the letters and memoranda cited above are binding upon this Court. The inherent problem in citing legislative histories and internal agency documents is that, like in the case at bar, they often reflect the understanding of only the author or the speaker, and often they conflict, rendering them neither binding nor persuasive.

 This Court is persuaded by defendants' arguments that section 103(c) imposes a one-time reporting requirement, the violation of which occurred on June 9, 1981, and is now wholly past. The penalties provided in section 109(b) do not allow for civil penalties for violations of section 103(c). Moreover, given the purpose of section 103(c) to establish a base-line inventory of hazardous wastes, this Court finds that failure to report under section 103(c) is a wholly past violation upon which a section 310 citizen suit cannot be based. Accordingly, Count Five of the Amended Complaint is dismissed as against Beazer and Interlake.

## V. CONCLUSION

For the reasons stated above, the defendants' motions to dismiss will be granted with respect to the following:

(1) the City's claim for harm to natural resources;

(2) the City's nuisance claim against Beazer and Interlake; and

(3) the City's citizen suit under section 310 of CERCLA.

In all other respects, the motions to dismiss of Beazer and Interlake will be denied.

**IT IS SO ORDERED.**

## JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the motions of Beazer East, Inc. ("Beazer") and The Interlake Corporation, The Interlake Companies, Inc. and Acme Steel Company (collectively referred to as "Interlake") to dismiss are:

(1) granted with respect to the claim of the City of Toledo ("the City") in Count One of the Amended Complaint for natural resources damages;

(2) denied with respect to the City's claim in Count One for response costs;

(3) denied with respect to Count Two;

(4) granted with respect to Count Three;

(5) denied with respect to Count Four; and

(6) granted with respect to Count Five.

**IT IS SO ORDERED.**